UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JIMMIE DEVOUX,

    Plaintiff,

v.                                                              CASE NO. 3:12-cv-540-J-34JBT

WALTER W. WISE, etc., et al.,

    Defendants.
_____/

# REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the undersigned on Defendants' Joint Motion to Enforce Mediated Settlement Agreement and Dismiss this Case with Prejudice ("Defendants' Motion") (Doc. 177) and Plaintiff's Motion for Relief from Judgment and Order, and the Mediator's Report Filed on October 28, 2013, Pursuant to Rule 60, Fed.R.Civ.P. ("Plaintiff's Motion") (Doc. 180) (collectively, "Motions"). Other filings pertinent to these Motions include (1) a Notice filed by Defendants on January 14, 2014 (Doc. 184) that attaches correspondence from Plaintiff and the Mediated Settlement Agreement at issue; (2) Defendants' response to this Court's Order requesting Defendants' position on

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

whether an evidentiary hearing is necessary (Doc. 185); and (3) Plaintiff's "Objection to the Mediator's Settlement Agreement Submitted by the Defendants" (Doc. 187).

For the reasons that follow, it is respectfully **RECOMMENDED** that Defendants' Motion be **GRANTED** except to the extent that it requests attorney's fees and costs, Plaintiff's Motion be **DENIED**, and the case be **DISMISSED with prejudice**.

**I.    Background**

In brief, Plaintiff's suit alleges that Defendants denied Plaintiff an opportunity to join a union because of his race and age. (*See* Doc. 159 at 6.) After more than a year of litigation, Plaintiff and Defendants participated in court-ordered mediation before mediator Terry Schmidt on October 24, 2013. (*See* Doc. 175.) On October 28, 2013, Mr. Schmidt filed a mediator's report indicating that the parties had completely resolved the case. (*Id.*) The Court therefore ordered the parties to file a joint stipulation of dismissal or other appropriate documents on or before December 27, 2013. (*See* Doc. 176.)

This stipulation was never filed, however. On November 20, 2013, Defendants filed their Motion to enforce the Settlement Agreement. It states:

> As of the date of this motion, the Defendants have not received the signed release from the Plaintiff. James Faul, an attorney at the law firm that represents Defendant Wise has telephoned Plaintiff and, after multiple attempts to reach him, finally been informed by the Plaintiff that he will not sign the stipulation of dismissal. Instead, Defendants have received a document titled "Plaintiff's Objection to the Mediator's Report Filed on October 28, 2013." *The Plaintiff's "Objection" does not cite any failure of any Defendant to adhere to the Settlement Agreement.* The "Objection" does not say he received anything less than he agreed to in the mediated Settlement Agreement. The Plaintiff has implicitly acknowledged receipt of $8,000 on the day the Settlement Agreement was executed. The Plaintiff is instead asking for the Settlement Agreement he agreed to [to] be set aside, or

> for the Court to allow him to extract an[] additional $2,000.00 to which he does not have any claim.

(Doc. 177 at 3–4 (internal record citations omitted).)

In response to the Court's Order (Doc. 181), Defendants also filed a copy of Plaintiff's "objection" to the mediator's report that Defendants reference in the Motion. (Doc. 184-1.) They also filed the Mediated Settlement Agreement at issue ("Settlement Agreement" or "Agreement"), which provides in part that in exchange for receiving $8,000 on the day of the mediation,[2] Plaintiff fully released Defendants and agreed to cooperate in filing a stipulation of dismissal with prejudice. (Doc. 184-2 at 1–2.) In addition, Defendants agreed to pay Plaintiff's share of the mediator's fee (Doc. 184-2 at 1), likely a significant sum given a mediation which appears to have lasted the better part of a workday (*see* Doc. 180 at 2).

Defendants argue that Plaintiff received everything he negotiated for at the mediation and that he has refused to cooperate in filing a notice of dismissal because he has since decided that he is unhappy with the agreement. (Doc. 177 at 7.) Defendants state:

> The plaintiff was involved fully in all negotiations which led to the settlement, he gave assent to the settlement, and he signed the mediated settlement agreement. It was clear to all

---

[2] In his latest filing, Plaintiff alleges that in addition to the Settlement Agreement Defendants submitted (Doc. 184-2), "[t]here is another Settlement Agreement that was written in ink at the top of the page, stating that the Defendants would pay $10,000 to Plaintiff and that he would only receive $8,000 because plaintiff was being charged [a] $2,000 processing fee to insure that he got the check on the day of the settlement." (Doc. 187 at 1.) This allegation suggests that the parties initially agreed to settle for $10,000, and then Plaintiff agreed to accept $8,000 if he could get the money the same day. Even assuming Plaintiff's allegations are true, he is bound by the second agreement to settle for the same-day $8,000 payment. *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) ("It is well established that the parties to a contract can discharge or modify the contract, however made or evidenced, through a subsequent agreement.")

3

> parties at the mediation conference that the settlement agreement was intended to constitute an end to this litigation. The Plaintiff has no basis to contend that he did not willingly assent to the terms and conditions of the settlement agreement, which required him to sign a release and dismiss his lawsuit with prejudice.

(*Id.* at 6–7.)

Plaintiff argues otherwise. In his Motion, Plaintiff requests that the Court put this case "back on the active docket and order that a new Settlement Conference be held so that justice may be served in this o[n]going matter." (Doc. 180 at 3.) He alleges facts and circumstances suggesting that his performance under the Settlement Agreement should be excused on the grounds of incapacity and duress. Most significantly, he alleges that after "a long and tortuous trip" from South Carolina to Jacksonville to attend the mediation, he was "mental[ly] and physically unable to participate in the conference in any meaningful way." (*Id.* at 1.) He alleges that he was dizzy, had high blood pressure and a headache, and was "under the influence of the numerous medication[s] that he takes on a daily basis." (*Id.*) He also alleges that he was subjected to abusive and racially charged language (*id.*), and that he was told by the mediator that if he did not agree to a settlement at the mediation, he would have to return to Florida again "until he agreed with defense counsel's demands" (*id.* at 3). Finally—and most troubling for the purposes of these Motions—Plaintiff alleges that he was confined in a "cold dark room which was closed and locked from the outside" during the mediation, and that "he was not given anything to eat or drink" or allowed to use the restroom. (*Id.* at 2.)

However, Plaintiff also alleges that after the mediation concluded, he cashed the $8,000 check he received at the mediation. He alleges no incapacity or duress in connection with cashing the check or in the more than three months since. Although he

4

desires to repudiate his obligations under the Settlement Agreement, he has kept the $8,000 and has never offered to return it. Curiously, despite his allegations of severe misconduct at the mediation, he asks the Court to send the case back to mediation, or for the Court to award him an additional $2,000. (Doc. 184-1 at 2.)

**II.    Standard**

This Court has recently articulated the standard applicable to the enforcement of a settlement agreement:

> Federal district courts have the inherent power to summarily enforce settlement agreements entered into by party litigants in a pending case. "[A] district court has jurisdiction to enforce a settlement agreement, at least when one party refuses to abide by the agreement prior to dismissal of the action." *Kent v. Baker*, 815 F.2d 1395, 1400 (11th Cir. 1987). . . . The Court should look to Florida law to determine whether the parties reached an enforceable settlement agreement. *See Londono v. City of Gainesville*, 768 F.2d 1223, 1227 (11th Cir. 1985).
>
> In Florida, settlement agreements are favored as an efficient way to settle disputes and as a means to conserve judicial resources. Courts will enforce them when it is possible to do so. *See Long Term Mgmt., Inc. v. Univ. Nursing Ctr., Inc.*, 704 So. 2d 669, 673 (Fla. 1st DCA 1992).

*BP Products N. Am., Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1132–33 (M.D. Fla. 2007). "Under Florida law, [a] party seeking to enforce a settlement agreement bears the burden of showing, by the preponderance of the evidence, that the opposing party assented to the terms of the agreement." *Shepard v. Florida Power Corp.*, Case No. 8:09-cv-2398-T-27TGW, 2011 WL 1465995, at *2–3 (M.D. Fla. Apr. 18, 2011) (internal quotations omitted). However, a party that seeks to avoid a settlement agreement because of duress or incapacity bears the burden of proof on these issues. *Id.*, at *3. Defendants bear the burden of proving any subsequent ratification of an

5

otherwise invalid agreement. *Irvine v. Cargill Investor Servs., Inc.*, 799 F.2d 1461, 1464 (11th Cir. 1986).

"Whether the court may summarily enforce [a settlement] agreement or should conduct an evidentiary hearing on the disputed issues depends upon the nature of the dispute." *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (internal quotation omitted). Summary enforcement of a settlement agreement is improper only if there is a "substantial factual dispute." *See id.*

### III. Analysis

Defendants have satisfied their burden of proving the existence of a settlement agreement by providing the Court with a copy of the Settlement Agreement executed by the parties to this litigation, including Plaintiff. (*See* Doc. 184-2.) The allegations in Plaintiff's Motion suggest that Plaintiff seeks to set aside his obligations under the Agreement because he lacked the capacity to enter into it and because he ultimately did so only under duress. However, the undersigned recommends that Plaintiff's Motion be denied on several grounds. First, even if the Court accepts Plaintiff's allegations as true, Plaintiff has ratified the Agreement, and is therefore bound by it. Second, Plaintiff's allegations, even if true, do not establish incapacity. And third, Plaintiff's allegations of duress are implausible, and thus do not raise a substantial factual dispute requiring an evidentiary hearing. [3] *See Murchison*, 13 F.3d at 1486.

---

[3] In recommending that an evidentiary hearing is not necessary, the undersigned has considered the dispositive issue of ratification, the implausibility of Plaintiff's allegations of duress, the insufficiency of his allegations of incapacity, Plaintiff's consistent stance in this case against having to make what for him is a "long and tortuous trip" from South Carolina to Jacksonville (Docs. 69 at 2, 146 at 1–3, 180 at 1, 184-1 at 1), Plaintiff's failure to request a hearing, and the burden on the mediator, the Defendants and their

6

### A. Ratification

Taking everything Plaintiff has alleged in his Motion and accompanying filings as true, Plaintiff has ratified the Settlement Agreement. This is so even if Plaintiff entered into the Agreement in the first instance while incapacitated or under duress.

It is well-established in Florida that a party may ratify a settlement agreement by knowingly accepting the benefits of that agreement. The Florida Supreme Court discussed this rule at length in *Hendricks v. Stark*, 99 Fla. 277 (1930):

> "Where a party, with knowledge of the facts entitling him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it have the effect of an election to affirm. . . . [A]ll that justice or equity requires for the relief of a party having such cause to impeach a contract is that he should have but one fair opportunity, after full knowledge of his rights, to decide whether he will affirm and take the benefits of the contract, or disaffirm it and demand the consequent redress. Any other rule would be regarded as unjust, even toward the party guilty of the wrong out of which grows the right to rescind."

*Id.* at 285 (quoting favorably from *Corpus Juris*); *see also Pretka v. Kolter City Plaza II, Inc.*, Case No. 13-11744, 2013 WL 6813742, at *1 n.1 (11th Cir. Dec. 26, 2013) (citing *Hendricks v. Stark* for this same proposition). "The court may find as a matter of law that where a party accepts the benefits of a settlement or compromise of his case and he knows or in exercise of due diligence should have known the facts concerning that settlement (as in the case at bar), he ratifies that settlement by the acceptance of those

---

attorneys in having to attend and testify at such a hearing. Defendants have also contended that an evidentiary hearing is not necessary. (*See* Doc. 186 at 1.)

7

benefits . . . and he is thereafter estopped to attack the settlement and the judgment entered thereon." *Nagymihaly v. Zipes*, 353 So. 2d 943, 944 (Fla. Dist. Ct. App. 1978).

Plaintiff alleges that "[a] check in the amount of $8,000 was issued and given to plaintiff and was cashed at the Defendants' Synovus Bank in Jacksonville, Florida at about 4:25pm." (Doc. 187 at 1.) Plaintiff makes no claim that he was incapacitated or under any duress when he cashed Defendants' check, or in the more than three months since the mediation. Despite having full knowledge of the facts alleged in his Motion since the day of the mediation, at no time has Plaintiff suggested that he is willing to return the money he received or pay his share of the mediator's fee. Rather, Plaintiff's Motion makes clear that he intends to keep the money and that he simply wants another opportunity to extract more money from Defendants, either at an additional "settlement conference" (s*ee* Doc. 180 at 3) or through a one-time payment of an additional $2,000 (s*ee* Doc. 184-1 at 2).

Thus, the undersigned recommends that by cashing Defendants' check and not returning or even offering to return the funds (nor paying or offering to pay his share of the mediator's fee), with full knowledge of the facts alleged in his Motion, Plaintiff has ratified the Settlement Agreement. Plaintiff has never disclaimed the Defendants' obligations under the Settlement Agreement, only his own. He is attempting to accept the benefits of the Settlement Agreement and renounce only the burdens. This he may not do. It is therefore immaterial whether Plaintiff was under duress or incapacitated at the mediation. The undersigned thus recommends that summary enforcement of the Settlement Agreement, without an evidentiary hearing, is appropriate.

**B.     Duress**

As an alternative ground to uphold the Settlement Agreement without an evidentiary hearing, the undersigned recommends that Plaintiff's allegations of duress are implausible.  "To set aside a settlement agreement based upon a claim of duress, the moving party must prove that (1) the settlement agreement was executed involuntarily, and thus not as a choice of free will; and (2) the other contracting party exerted some improper and coercive conduct over the moving party to effectuate the settlement." *Shepard*, 2011 WL 1465995, at *3 (internal quotation omitted).  This coercive conduct must constitute "extreme external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." *Id.*  Typically the other contracting party must be the one exerting improper influence. *Menaged v. City of Jacksonville Beach*, Case No. 3:11-cv-586-J-12JBT, 2013 WL 461999, at *2 (M.D. Fla. Jan. 14, 2013), *adopted by* 2013 WL 492543 (M.D. Fla. Feb. 7, 2013).  "However, at least one Florida court has recognized that in 'compelling' circumstances involving a mediator's substantial violation of the rules of conduct for mediators, a court has the inherent authority to set aside a mediated settlement agreement." *Id.* (citing *Vitakis-Valchine v. Valchine*, 793 So. 2d 1094, 1099–1100 (Fla. Dist. Ct. App. 2001)).

Plaintiff alleges in his Motion and related papers that he was belittled, yelled at, and locked in a cold dark room for six and a half hours.  (Doc. 180 at 1–2.)  In addition, he was denied food and water and the ability to use the restroom until he agreed to the Settlement Agreement.  (*Id.* at 2.)  He also appears to claim that these actions, principally by the mediator, were at least in part racially motivated.  (*See id.* at 1.)

While if true, these allegations would likely establish duress, the undersigned recommends that they are implausible, and thus do not create a substantial factual dispute. *See Hewett v. Leblang*, Case No. 12-civ-1713-PKC, 2011 WL 2820274, at *8 (S.D.N.Y. July 5, 2012) (granting a motion to dismiss without a hearing where the parties acknowledged the existence of a settlement agreement and the court found implausible the plaintiff's allegations that she executed the agreement while incompetent).

In reaching this conclusion, the undersigned notes that the Settlement Agreement was arrived at through court-ordered mediation facilitated by a neutral mediator. The mediator, Terry Schmidt, has been a member of the Florida Bar in good standing for over 40 years, and has an excellent reputation in the Jacksonville legal community as both an attorney and a mediator.[4] For example, from 1999 through 2001, Mr. Schmidt assisted the Florida Bar with the investigation and successful disbarment of F. Lee Bailey for attorney ethics violations. *See The Florida Bar v. Bailey*, 803 So. 2d 683, 685 (Fla. 2001). A 2002 resolution by the Board of Governors of the Florida Bar commended Mr. Schmidt for donating more than $50,000 of his time to that effort. *See* Regular Minutes of the February 1, 2002 Meeting of the Florida Bar Board of Governors, at 7.

---

[4] Federal Rule of Evidence 201 allows the Court, at any stage of a proceeding, to take judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." In the past, courts have approved judicial notice of the villainous reputation of the Ku Klux Klan, *see United States v. Crenshaw Co. Unit of the United Klans of Am.*, 290 F. Supp. 181, 182 n.1 (M.D. Ala. 1968), an airline's reputation for hiring attractive flight attendants, *see In re Nat'l Airlines, Inc.*, 434 F. Supp. 269, 275 n.9 (S.D. Fla. 1977), and, most on point, a local attorney's reputation for good work, *see Edwards v. Hale*, 302 F. Supp. 775, 777 (S.D. Ala. 1969).

Plaintiff's allegations that this neutral mediator caused or permitted Plaintiff to be falsely imprisoned and denied food, water, and access to a restroom, simply to coerce a resolution to a mediation in which he has no personal stake, are not plausible.  This conclusion is further supported by Plaintiff's request that the Court order *another mediation*, which is an anomalous request from someone who alleges he was abused at the first.  (*See* Doc. 180 at 4.)  In these circumstances, the undersigned recommends that an evidentiary hearing would be a useless formality.

### C.     Incapacity

Finally, Plaintiff's Motion and related papers do not allege facts sufficient to establish that Plaintiff was incompetent at the time he executed the Settlement Agreement.  To avoid a contract on such grounds, a party must show that he "lacked mental capacity to enter into a contract at the time of the transaction."  *Shepard*, 2011 WL 1465995, at *3.  "A person has sufficient mental capacity to enter into a contract if he or she comprehends the essential elements of the matter to be agreed upon."  *Arnold v. Fla. Dep't of Corrs.*, Case No. 4:10cv204, 2011 WL 6742499, at *3 (N.D. Fla. Oct. 21, 2011).  "Feebleness of body or mind does not, without more, create a presumption of incompetence or authorize a court to set aside a contract."  *Shepard*, 2011 WL 1465995, at *3; *see also Menaged*, 2013 WL 461999, at *3.  Similarly, it is not sufficient for a party simply to show that he was under the influence of his daily medications at the time he signed the agreement.  *See Crupi v. Crupi*, 784 So. 2d 611, 614 (Fla. Dist. Ct. App. 2001) (holding that evidence that a party was upset at the mediation and took three Xanax pills before signing settlement agreement was insufficient to support a finding of incapacity: "Otherwise, few, if any settlement agreements would be enforceable.").

Here, in support of his claim of incapacity, Plaintiff offers only that he was exhausted from the drive from South Carolina to Jacksonville, that he had a headache, high blood pressure, and was dizzy, and that he was "under the influence" of his daily medications.  (Doc. 180 at 1.)  In light of the foregoing case law, the undersigned recommends that these allegations are not enough to establish incapacity or even to create a substantial factual dispute thereon.  See *Murchison*, 13 F.3d at 1486.

### D. Attorney's Fees

Although the undersigned recommends that the Settlement Agreement be upheld, the undersigned also recommends that the Court deny Defendants' request for attorney's fees and costs incurred regarding the Motions.

In the Eleventh Circuit, "[a] court may impose sanctions for litigation misconduct under its inherent power."  *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009).  "The court's inherent power derives from the court's need to manage its own affairs so as to achieve the orderly and expeditious disposition of cases."  *Id.*  Under it, a court may impose sanctions if it finds that a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or if a court finds that "fraud has been practiced upon it, or that the very temple of justice has been defiled."  *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Solutions, LLC*, Case No. 3:10-cv-978-37JBT, 2013 WL 3815595, at *7 (M.D. Fla. July 22, 2013).  "This power, however, must be exercised with restraint and discretion."  *Eagle Hosp.*, 561 F.3d at 1306 (internal quotation omitted).

In support of their request for fees and costs, Defendants cite to a single case from the Southern District of Ohio, *Tocci v. Antioch Univ.*, Case No. 3:07-cv-314, 2013 WL 4517838 (Aug. 26, 2013).  In that case, the court awarded attorney's fees against a

pro se plaintiff for the plaintiff's "vexatious, bad faith conduct," pursuant to its inherent authority to regulate the litigants before it. *Id.*, at *22. In deciding to do so, the *Tocci* court noted that the plaintiff's "accusations of theft, extortion, and conspiracy, along with the puerile insults . . . directed at [the defendant's] representatives all demonstrate a disregard for basic civility, further poisoning the dynamic between the parties and prolonging the litigation." *Id.* The court further observed, as an example of Plaintiff's egregious conduct, that during and after mediation, the plaintiff threatened to write a book that would purportedly impugn the defendant's reputation unless he received $50,000. Such a proposition possibly amounted to felony extortion under Ohio law. *Id.*

Here, the undersigned is disturbed by Plaintiff's allegations, and finds them improper and implausible. However, the undersigned is unable to determine whether Plaintiff's conduct stems from bad faith rather than from a more benign cause, such as a severe misunderstanding of the mediation process.[5] Defendants are content with the record before the Court, stating that "no evidentiary hearing is necessary" (Doc. 186 at 1) and that "[h]ere, Plaintiff's bad faith is evident" (*id.* at 3). However, the undersigned cannot draw that conclusion.

Moreover, even if Plaintiff's attack on the mediation participants suggests bad faith, it does not rise to the level of the plaintiff's conduct in the *Tocci* case. Rather, this case seems more analogous to *McCormick v. Brezinski*, Case No. 08-10075, 2010 WL

---

[5] For example, in an apparent attempt to bolster his claim of duress, Plaintiff alleges that, at the mediation, "[w]hen defendant's attempt at intimidation did not work, Plaintiff was taken from the [c]onferrence room to another room at the end of a dark hallway, more than 60 feet away from the other participants." (Doc. 180 at 2.) Although Plaintiff apparently interpreted this as something sinister, it is standard mediation practice for parties to begin by discussing the merits of their respective positions together and then to go to separate rooms to discuss the case and exchange offers through the mediator.

1463176, at *6 (E.D. Mich. Apr. 13, 2010), cited to and distinguished by the *Tocci* court. There, the *McCormick* court observed:

> Plaintiff, in the courts opinion, suffers from "buyer's remorse" regarding the terms she agreed to during the settlement conference. Plaintiff negotiated a settlement under circumstances which must have been stressful for her; now, she is attempting to attack the settlement agreement from every angle. The best of her arguments are tenuous, and the worst are plainly frivolous.

2010 WL 1463176, at * 6. The *McCormick* court nevertheless concluded that, "given her *pro se* status, there is little evidence that her conduct supports a finding of actual bad faith or conduct tantamount to bad faith." *Id.* Plaintiff's conduct does appear to more closely approach bad faith. However, given Plaintiff's pro se status and Defendants' reliance on just the record before the Court without an evidentiary hearing, the undersigned recommends that the Court exercise its discretion to not impose the requested sanction of attorney's fees and costs against Plaintiff.

### IV. Conclusion

Accordingly, the undersigned respectfully **RECOMMENDS**:

1. Defendants' Motion (**Doc. 177**) be **GRANTED in part and DENIED in part**. The Settlement Agreement should be upheld but attorney's fees and costs should not be awarded against Plaintiff.

2. Plaintiff's Motion (**Doc. 180**) be **DENIED**.

3. The case be **DISMISSED with prejudice**.

**DONE AND ENTERED** at Jacksonville, Florida, on February 12, 2014.

/s/ Joel B. Toomey
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Pro Se Plaintiff

Counsel of Record

15